UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ENRIQUE CAMARGO, : | |
| : | |
| Plaintiff, : | |
| v. : | No. 5:15-cv-06215 |
| : | |
| ALICK SMITH GENERAL : | |
| CONTRACTOR, INC.; and : | |
| ALICK SMITH PROPERTIES, LLC, : | |
| : | |
| Defendants. : | |

**MEMORANDUM OPINION**

**Motion to Enforce the Parties' Settlement Agreement, ECF No. 38 – Granted in Part**

**Joseph F. Leeson, Jr.**                                                                                           **November 3, 2016**
**United States District Judge**

  Plaintiff Enrique Camargo claims that his former employer, Defendants Alick Smith General Contractor, Inc. and Alick Smith Properties, LLC, discriminated against him on the basis of his national origin. During an in-person settlement conference held by the Court, the parties reached an agreement to settle the dispute, and the case appeared to have been resolved. Camargo now reports that Defendants have not followed through with their end of the agreement due to their failure to pay the amount required of them under the agreement, and he seeks to have the Court order them to comply. His request is granted, but in a slightly different manner than he has proposed.

**I.     Background**

  Toward the end of discovery, the Court convened an in-person settlement conference. In attendance were Camargo's spouse, Courtney Camargo, who had full authority to settle the case on his behalf, and Alick Smith, who had the authority to settle the case for both of the Defendants. *See* Conference Tr. 2:8-16, ECF No. 37. Mr. Camargo was also available by telephone. *Id.* The conference proved to be fruitful, and the two sides reached an agreement to settle the case. At the conclusion of the conference, the Court read a detailed recitation of the terms of their agreement into the record, and both Smith and Mrs. Camargo, and their respective attorneys, confirmed their agreement to those terms (Mr. Camargo also relayed his agreement to the terms to Ms. Camargo by telephone). *See id.* at 3:20-4:6, 4:22-5:6. The parties also agreed that they would reduce the terms of their agreement to writing, and Camargo's counsel volunteered to prepare the written agreement. *Id.* at 3:7-19.

After the settlement conference concluded, the Court dismissed this case with prejudice pursuant to Local Rule of Civil Procedure 41.1(b). Under that Rule, an order of dismissal "may be vacated, modified, or stricken from the record, for cause shown, upon the application of any party served within (90) days of the entry of such order." The Rule acts as "a standardized, short-hand method by which the Eastern District of Pennsylvania may express its intention to retain jurisdiction over matters dismissed pursuant to agreement of counsel." *Phila. Training Ctr. Corp. v. Georgia*, No. 90-10184F, 1993 WL 39294, at *1 (E.D. Pa. Feb. 10, 1993).

Sixty-one days after the case was dismissed, Camargo asked the Court to reopen the case. He reported that Defendants had failed to sign the written settlement agreement that his counsel prepared (and which their own counsel had approved[1]) and failed to pay Camargo the sum that the parties had agreed upon. *See* Pl.'s Mot. Vacate, ECF No. 32. Defendants' counsel concurred with that assessment. He explained that he had made "numerous recommendations and warnings" to his clients to follow through with the settlement agreement, but they had failed to respond to him. Mot. Withdraw ¶ 6, ECF No. 36. He also reported that his clients had not responded to his repeated requests for payment of his fees, and as a result, he asked for permission to withdraw from the case.

Based on this information, the Court granted Camargo's request to reopen the case, and he promptly moved to enforce the parties' settlement agreement. That motion remains pending. Separately, in an order dated September 22, 2016, the Court granted Defendants' counsel's request to withdraw. In that order, which counsel was directed serve on both of his clients,[2] the Court warned the two Defendants that if they did not obtain replacement counsel by October 22, 2016, a default judgment may be entered against them.[3] That deadline has passed, and there has been no response from either of them.

## II.   The enforceability of the settlement agreement

Camargo seeks to have the Court order the Defendants to sign the written settlement agreement and perform all of their obligations under the agreement within thirty days, under the threat of sanctions. Camargo's request raises two questions. First, does an enforceable settlement agreement exist between the parties, despite the fact that Defendants never signed the written settlement agreement? Second, if an enforceable agreement does exist, is the relief Camargo is seeking appropriate?

---

[1]   *See* Mot. Enforce Settlement Ex. C, ECF No. 38-3.
[2]   As directed, Defendants' counsel filed proof of service with the Court. *See* ECF No. 40.
[3]   The reason for that warning was twofold. First, a district court has the authority to impose a default judgment against a party that "fail[s] to comply with its own unambiguous orders to obtain substitute counsel." *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 918 (3d Cir. 1992); *see also* Fed. R. Civ. P. 83(b). Second, corporations and limited liability companies like Defendants "can only appear in federal court through licensed counsel," which means that they are subject to default judgment if they fail to retain substitute counsel. *See Erie Molded Plastics, Inc. v. Nogah, LLC*, 520 F. App'x 82, 85 (3d Cir. 2013).

**A.        The parties formed an enforceable agreement at the settlement conference.**

Settlement agreements are a type of contract, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *Main Line Theatres, Inc. v. Paramount Film Distrib. Corp.*, 298 F.2d 801, 803 n.1 (3d Cir. 1962), which means that "[t]he enforceability of settlement agreements is governed by principles of contract law." *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999) (citing *McDonnell v. Ford Motor Co.*, 643 A.2d 1102, 1105 (Pa. Super. Ct. 1994)). The question is whether the two sides intended to form a binding agreement at the settlement conference, or whether those discussions were preliminary negotiations that fell through when Defendants failed to sign the written settlement agreement.

The fact that the parties expressly contemplated that a formal, written recitation of their agreement would come later gives reason for pause, because that could suggest that they did not intend to be bound until they had executed the document. *See* Restatement (First) of Contracts § 26 cmt. b (Am. Law Inst. 1932) ("If the parties indicate that [an] expected document is to be the exclusive operative consummation of the negotiation, their preceding communications will not be operative as offer or acceptance."). But it is also possible that the parties did walk away from the conference with an enforceable agreement, because "parties may bind themselves contractually although they intend, at some later date, to draft a more formal document." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) (quoting *Goldman v. McShain*, 247 A.2d 455, 459 (Pa. 1968)). This makes sense, because if two parties intend to strike an enforceable bargain, "the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof" does not mean that their contract does not yet exist. *See id.* (quoting Restatement (First) of Contracts § 26).

As these observations make clear, "when a later-written memorialization is contemplated, the crucial inquiry in ascertaining the existence of a contract is the intention of the parties." *Hatalowich v. Redevelopment Auth.*, 312 A.2d 22, 25 (Pa. 1973). Intent refers to "their outward and objective manifestations of assent," not any "undisclosed and subjective intentions." *Am. Eagle*, 684 F.3d at 584 (quoting *Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)).

It is clear that both sides intended to enter into an enforceable agreement to settle this case at the settlement conference. They reached agreement on each of the essential terms of the settlement, and both sides confirmed their agreement to settle the case on those terms on the record, in the Court's presence.[4] *See Field v. Golden Triangle Broad., Inc.*, 305 A.2d 689, 694 (Pa. 1973) ("What is necessary is that the parties agree to all the essential terms and intend [for them] to be binding upon them."). After the conference, the only thing left to do was for Camargo's lawyer to memorialize those terms, and there is no indication that the agreement was

---

[4]    *See* Conference Tr. 4:22-5:6 ("*The Court*: . . . Mr. Smith, are you in agreement with and accept the terms of the settlement? *Mr. Smith*: Yes. *The Court*: And Mrs. Camargo, you've heard the terms of the settlement. Are you in agreement and accept it? *Mrs. Camargo*: Yes. *The Court*: And I understand from your counsel that you've talked to your husband, Enrique, and he's also in agreement to accept the terms of the settlement? *Mrs. Camargo*: Yes.").

contingent upon the preparation or execution of that document.[5] *See Pisarz v. PPL Corp.*, 604 F. App'x 196, 201 (3d Cir. 2015) ("Nothing in the record or in the exchanges between the parties suggests that . . . signing . . . the agreement was a condition precedent to the agreement."). This conclusion is supported by the statement of Defendants' own counsel, who, prior to his withdrawal, expressed concern that in the time since the settlement conference, his clients had "failed to submit payment to [Camargo] *as agreed upon* between the parties." *See* Mot. Withdraw ¶ 6 (emphasis added).

Defendants' failure to sign the written agreement that Camargo's lawyer prepared does not affect the enforceability of their agreement, because the contract had already been formed at the settlement conference. The written agreement was a memorialization of an agreement that had already been made.

As for the effect of the unsigned written agreement, this does not supplant the agreement they reached orally at the settlement conference. *Cf.* Restatement (First) of Contracts § 26 cmt. c ("If the written document is prepared *and executed*, the legal relations of the parties are then largely determined by that document . . . ." (emphasis added)). It can, however, serve as a source of evidence about the substance of their agreement. *See Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 202 n.11 (3d Cir. 2012) (examining the terms of a written settlement agreement that was prepared by one side but never signed by the other, "because no party dispute[d] that the Written Agreement reflect[ed] the terms discussed during the oral agreement").

## B.   Defendants shall comply with their obligations under the settlement agreement within thirty days, or a default judgment may be entered.

Camargo asks the Court to order Defendants to fulfill their obligations under the settlement agreement within thirty days, with the threat of sanctions if they fail to comply. A failure to follow through with a settlement agreement, however, is simply a breach of contract, *see Kokkonen*, 511 U.S. at 381, and a claim for breach of contract is usually not an occasion for court-imposed sanctions.

Camargo claims that Defendants have breached the settlement agreement, and they have not responded. In effect, they are in default on Camargo's breach of contract claim. Accordingly, a default will be entered against them, *see* Fed. R. Civ. P. 55(a), and the Court will adopt Camargo's suggestion to afford Defendants thirty days to fulfill their obligations under the settlement agreement. If they do not, Camargo may return and apply for the entry of a default judgment for their breach. *See* Fed. R. Civ. P. 55(b). An appropriate order follows.

---

[5]   The written agreement that Camargo's lawyer prepared contains only the terms that the parties discussed at the conference with no additions or alterations, which further supports the notion that the parties concluded their agreement at the settlement conference. *Cf. Mazzella*, 739 A.2d at 227-28 (declining to find that two parties had formed an enforceable settlement agreement at a settlement conference because their subsequent attempts to memorialize the terms of their agreement revealed ongoing disagreements that "went to the essence of the parties' bargain").